# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANITA HOUCHIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-522-D |
| | ) | |
| HARTFORD LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Anita Houchin ("Houchin") alleges Defendant Hartford Life Insurance Company ("Hartford") engaged in fraud and bad faith concerning an insurance policy under which she was the named beneficiary. Before the Court is Hartford's Motion for Summary Judgment [Doc. No. 21], to which Houchin has filed her response in opposition [Doc. No. 36]. The matter is fully briefed and at issue.

## BACKGROUND

The following facts are undisputed and viewed most favorably to Houchin. Dorothy Kendrick, Houchin's mother, elected to receive a $1,000 complimentary Accidental Death and Dismemberment ("AD&D") insurance policy (the Policy) from First National Bank & Trust Company, which was insured by Continental Casualty Company. Hartford subsequently became the new insurance carrier and, by a letter dated January 5, 2007, notified Ms. Kendrick of the change. In its letter, Hartford

suggested Ms. Kendrick's coverage was too low and that she could increase the amount of her coverage, "with no questions asked." The letter stated Ms. Kendrick was eligible for up to $300,000 in additional coverage. The Coverage Increase Request Form provided four spaces with corresponding amounts of additional coverage to choose from: $300,000, $150,000, $75,000, and $25,000. Ms. Kendrick checked the space next to the $25,000 amount and named Houchin as beneficiary.[1] Beneath Ms. Kendrick's signature read the proviso: "Benefits reduce 50% at age 70 or older."[2] Ms. Kendrick was 81 years old when she elected the additional coverage.

A Certificate of Insurance was sent to Ms. Kendrick to reflect the new terms of coverage. Underneath the heading "Schedule," the certificate stated the Basic (Non-Contributory) Principal Sum Amount of her coverage was $1,000 and the Voluntary (Contributory) Principal Sum Amount was $25,000. The certificate noted the premium was $8.25 and would be billed quarterly beginning April 1, 2007. Beneath the schedule, the certificate stated:

---

[1] Houchin assisted her mother in completing the form and believed she elected to receive $75,000 and her premiums were going toward that amount.

[2] The Accident Insurance Enrollment Form under which Ms. Kendrick elected to receive the complimentary $1,000 of coverage contained the same provision.

30 DAY RIGHT TO EXAMINE CERTIFICATE: We urge you to examine this certificate closely. If you are not satisfied, return it to us within 30 days of your Effective Date. In that event, we will consider it void from the certificate Effective Date and any premium paid will be refunded. Any claims paid during the initial 30 day period will be deducted from the refund.

* * *

Accidental Death and Dismemberment Reduction on and after Age 70: *On the date You attain age 70, Your amount of Principal Sum will reduce by 50%. If You are age 70 or over You will not be eligible for a Principal Sum Amount that is more than 50% of the Principal Sum Amount(s) shown above.*

* * *

Injury means bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under this Policy; *Loss resulting from: a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury.*

(Emphasis added). Neither Ms. Kendrick nor Houchin returned the certificate or disputed the amount of coverage afforded.

Several years later, Ms. Kendrick was rushed to the hospital after experiencing breathing problems apparently caused by aspirating something into her right lung. The ambulance report, which recorded Ms. Kendrick's state as she was being transported from her nursing home, said she may have aspirated and her upper airway "had a lot of congestion." Ms. Kendrick was admitted to Mercy Hospital in Ardmore, OK, where medical reports showed she had respiratory distress and had not been able

3

to walk for about a year. Ms. Kendrick was diagnosed as having, *inter alia*, aspiration, right lung pneumonia, ischemic cardiomyopathy (weakened heart muscle), acute systolic congestive heart failure, and acute renal failure (abrupt loss of kidney function).

Ms. Kendrick passed away the same day. Her death certificate listed the cause(s) of death as (1) respiratory and cardiac failure due to (2) aspiration pneumonitis[3] and acute renal failure due to (3) congestive heart failure, the first two events transpiring the day of her death. The manner of death was listed as "natural," as opposed to "accidental" or any of the other available options listed on the certificate. Houchin submitted an insurance claim to Hartford. On the claim form, Houchin stated the amount of available insurance was $25,000. On her loss statement, Houchin described the accident as "Mother choked somehow and aspirated and pneumonia occurred all at once."

As part of her investigation, Hartford claims analyst April Madden examined (1) Houchin's claim form, (2) the death certificate, (3) the ambulance records, and (4)

---

[3]According to the A.D.A.M. Medical Encyclopedia provided by the U.S. National Library of Medicine and the National Institute of Health, "aspiration pneumonitis" is a breathing condition in which there is swelling or an infection of the lungs that occurs when food, saliva, liquids, or vomit is breathed into the lungs or airways leading to the lungs, instead of being swallowed into the esophagus and stomach.

Ms. Kendrick's admission and discharge records from Mercy. Madden did not interview anyone from the nursing home and did not submit the medical records to a medical consultant for review. Madden also testified she was unaware whether Ms. Kendrick had aspirated vomit. Based on her investigation, Madden concluded Ms. Kendrick's death was caused by sickness and not an "injury" as that term was defined under the Policy. Hartford, accordingly, denied Houchin's claim and sent the following letter, which stated in part:

> As set forth above, the Policy defines Injury as bodily injury caused by an accident and the accident must result directly and independently of all other causes[.] Loss resulting from sickness or disease[] is not considered as resulting from injury. It has been established that Dorothy Kendrick's death was due to respiratory and cardiac failure, aspiration pneumonitis, acute renal failure and congestive heart failure. Because Dorothy Kendrick's death was due to sickness or disease, it is not considered as a result of injury. . . . Accordingly, her loss does not constitute a covered loss under the terms of the Policy, therefore, no Accidental Death benefits are payable.

Madden conceded that the pneumonia in Ms. Kendrick's lungs was caused by aspiration. And, although she concluded Ms. Kendrick's death was due to "sickness," she could not cite any information evidencing Ms. Kendrick was sick prior to the aspiration, nor could she identify what other possible illness could have caused her death. Houchin did not appeal the denial of her claim. Instead, she sued Hartford in Oklahoma County District Court, where she alleged Hartford breached the implied

5

covenant of good faith and fair dealing by, *inter alia*, "failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information." The Petition also alleged Hartford's solicitation letter to Ms. Kendrick was false and misleading in that it promised coverage for tragic accidents, although it:

> wholly fail[ed] to disclose that a person's current health condition, current age, or susceptibility to accidental death as a result of their existing health status would in any way affect their eligibility for coverage for such tragic accidents. The letter indicates that benefits reduce 50% at age 70, but Mrs. Kendrick was already over 70 years old and the letter still represented that she would increase her coverage to $75,000 by payment of $8.25. The letter is written to express that a person was eligible for the coverage without regard to their current health or age and yet [Hartford] knows that they routinely deny life benefits under this policy based upon pre-existing health conditions that might make a person more susceptible to dying following an accident. . . . At the time that Hartford sent these solicitation materials to Mrs. Kendrick and her family . . . Hartford knew that they routinely denied these accidental life benefits to persons that did not enjoy optimum health.

Hartford defends its denial of Houchin's claim and contends it is entitled to summary judgment on four grounds: (1) Houchin's fraud claim is barred by the two-year statute of limitations, (2) Houchin cannot, as a matter of law, prove the elements of fraud, (3) Hartford's investigation does not indicate bad faith, and (4) in light of the foregoing, Houchin has shown no entitlement to punitive damages.

6

## STANDARD OF DECISION

Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Callahan v. Unified Gov't of Wyandotte County*, 806 F.3d 1022, 1027 (10th Cir. 2015). An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The nature of the showing depends upon whether the movant bears the burden of proof at trial with respect to the particular claim at issue. If the non-moving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis in original); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 n. 2 (10th Cir. 1992). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the non-movant's claim. *Adler*, 144 F.3d at 671; *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014).

The nonmoving party may not rest upon the mere allegations or denials of its

pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007). However, even if the non-movant produces some evidence, summary judgment may be granted if that evidence is "not significantly probative." *Hornady*, 746 F.3d at 1001 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

The Court views the evidence and draws inferences in the light most favorable to the non-movant. *Callahan*, 806 F.3d at 1027. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014).

## DISCUSSION

Because this case was removed from state court based on diversity jurisdiction, Oklahoma law applies to determine the substantive rights of the parties. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) ("A federal court sitting in diversity must apply state law as propounded by the forum's highest court.") (citing *Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1202 n. 2 (10th Cir.

2002)).

## I. FRAUD

"[F]raud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth." *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 11, 308 P.3d 1041, 1045 (citations omitted). The elements of actionable fraud are (1) a false misrepresentation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, (3) with the intention that it be acted upon, and (4) which is relied upon by the other party to her own detriment. *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. The statute of limitations for fraud actions is two years; a claim for fraud accrues when a plaintiff ascertains or discovers each element of the claim. *See* 12 OKLA. STAT. § 95(A)(3); *Horton v. Hamilton*, 2015 OK 6, ¶ 18, 345 P.3d 357, 363 ("A claim for fraud accrues when a person discovers the fraud. A party discovers fraud when he or she ascertains each element of the claim.") (citation omitted).[4] All elements of fraud must be

---

[4]"To grant summary judgment on the affirmative defense that a statute of limitations ran on a claim, the evidentiary material must show when the plaintiff knew or in the exercise of reasonable diligence would have discovered the act which gave rise to the claim." *Horton*, 345 P.3d at 360 (citing *Redwine v. Baptist Med. Ctr. of Okla., Inc.*, 1983 OK 55, ¶ 9, 679 P.2d 1293, 1295). "Otherwise, when the statute of limitations begins to run is a question of fact if reasonable people would reach
(continued...)

9

present; absence of any one is fatal to the plaintiff's claim. *McCain v. Combined Commc'n Corp. of Okla., Inc.*, 1998 OK 94, ¶ 11, 975 P.2d 865, 867.

"Fraud is never presumed and each of its elements must be proved by clear and convincing evidence." *Bowman*, 212 P.3d at 1218 (citations omitted); *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008). The "clear and convincing" standard is "the highest standard of proof that the law imposes in civil cases." *Kupersteinn v. Hoffman-Laroche*, 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006); *see also Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, No. 2:08-2043, 2014 WL 6773517, at *3 (D.S.C. Dec. 2, 2014) (clear and convincing standard is "the highest burden of proof known to the civil law."). "Also, the reliance referred to must be justifiable." *State ex rel. S.W. Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 19, 519 P.2d 491, 495. "[T]he gist of fraudulent misrepresentation is the production of a false impression . . . and damage sustained as the natural and probable consequence of the acts charged." *Id.* (citations omitted).

Although fraud is generally a question of fact, *Croslin*, 308 P.3d at 1046, summary judgment is appropriate where, under the uncontroverted facts, a plaintiff fails to demonstrate the viability of her claim. *See, e.g., Bormann v. Applied Vision*

---

[4](...continued)
'conflicting opinions thereon.'" *Id*.

*Systems, Inc.*, 800 F.Supp. 800, 811 (D. Minn. 1992)("Although reliance is generally a question of fact, this Court is not precluded from granting summary judgment where plaintiffs fail to demonstrate a genuine issue of material fact as to this essential element.") (citations omitted); *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1093 (D. Utah 1992) ("[A]llegations of fraud do not lend themselves readily to resolution by way of summary judgment. . . . . Even so, [s]ummary judgment is appropriate when conclusory allegations of fraud stand alone, unsupported by specific evidence pertinent to a claim of common law fraud.") (citations and internal quotation marks omitted).

The Court, construing all evidence and reasonable inferences therefrom in favor of Houchin, concludes that summary judgment is appropriate because her evidence fails to raise a genuine issue of material fact on at least one of the essential elements of a fraud claim, and her evidence is not significantly probative in light of the "clear and convincing" evidentiary standard as required by Oklahoma law. First, there is no evidence of an actionable misrepresentation. Hartford's solicitation letter stated Ms. Kendrick was eligible to receive additional coverage up to $300,000. She elected, and received, additional coverage of $25,000. Although Houchin testified this was a mistake, albeit unilaterally, there is no evidence she sought to correct the decision or Hartford was aware the amount of additional coverage was not what she

had requested. Moreover, notwithstanding Houchin's complaints regarding the 50% reduction of benefits once an insured reaches age 70, her claim seeks damages for Hartford's *denial* of benefits because Ms. Kendrick's death did not meet the definition of "injury" under the Policy, not for any *reduction* in coverage. Houchin's grievances regarding the nature of Hartford's solicitation letter are belied by her own actions in this lawsuit, rendering them incongruous. Because Houchin has failed to show any misrepresentation or detrimental injury as required by Oklahoma law, summary judgment as to her fraud claim will be granted.

Having found that, as a matter of law, Houchin has failed to establish a triable issue as to all the requisite elements for fraud, the Court declines to address whether the claim is barred by the statute of limitations.

## II. BAD FAITH

To establish a bad-faith claim, Houchin must show (1) she was covered under the Policy issued by Hartford and it was required to take reasonable actions in handling the claim, (2) Hartford's actions were unreasonable under the circumstances, (3) Hartford failed to deal fairly and act in good faith toward Houchin in its handling of her claim, and (4) Hartford's breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by Houchin. *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093; *Automax Hyundai South,*

*L.L.C. v. Zurich American Ins. Co.*, 720 F.3d 798, 810 (10th Cir. 2013). Under the tort of bad faith, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993) (citing *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989)); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006).

Stated another way, "[t]he insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" *Oulds*, 6 F.3d at 1436 (citing *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568, 572, *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, 681 P.2d 760, 762) (paraphrasing in original); *Sims*, 469 F.3d at 891. An insurer's conduct does not meet this standard if (1) the manner of investigation hints at a sham defense or otherwise suggests that material facts were overlooked, or (2) the insurer intentionally disregarded undisputed facts supporting the insured's claim. *Oulds*, 6 F.3d at 1442. "Thus, in order to establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Id.* at 1436 (citing *McCoy*, 841 P.2d at

13

572).

The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a plaintiff to a jury trial. *Id*. (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 1990 OK CIV APP 89, 804 P.2d 463, 468). A jury question arises only where relevant, material facts are in dispute or the undisputed facts permit different conclusions as to the reasonableness and good faith of the insurer's conduct. *Id*. "On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *Id*. at 1436-37. "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id*. "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Oulds*, 6 F.3d at 1437 (quoting *Manis*, 681 P.2d at 762).

Applying these standards here, the Court finds genuine issues of material facts preclude summary judgment on Houchin's bad faith claim. Houchin has presented evidence that would permit different conclusions as to the reasonableness and good faith of Hartford's investigation. Madden agreed that the pneumonia in Ms.

Kendrick's lung was caused by aspiration. Although Madden denied the claim on the basis Ms. Kendrick's death was caused by "sickness," as opposed to "injury," she was unable to identify what other "sickness" she believed caused the aspiration. She did not interview anyone at the nursing home to determine what Ms. Kendrick aspirated or any of the factual circumstances surrounding the incident. In fact, she admitted she did not know whether Ms. Kendrick had vomited. Nor did Madden seek consultation from a medical expert.[5]

Hartford relies heavily on this Court's decision in *Morrison v. Stonebridge Life Ins. Co.*, No. CIV-11-1204-D, 2015 WL 137261 (W.D. Okla. Jan. 9, 2015). *Morrison*, however, is distinguishable. In that case, evidence was relied upon by the insurer which suggested a cardiac arrest suffered by Mr. Morrison may have preceded his fall and head injury, or at the very least the cardiac arrest contributed to his injuries, thus providing for a no-coverage decision based on the lack of an exclusive accidental injury. Mr. Morrison had a significant history of heart disease. Moreover, in *Morrison* the decedent's treating physician indicated that the pre-existing heart condition played a role in bringing about his death. Citing the Tenth Circuit case *Flores v.*

---

[5]This is not to say that an insurer must consult with a medical expert in evaluating every claim brought under a AD&D policy, but only that under the facts of this case, such failure is probative as to whether a genuine issue of material fact exists regarding Houchin's bad faith claim.

*Monumental Life Ins. Co.*, 620 F.3d 1248 (10th Cir. 2010), this Court reasoned that if death resulted because an accident aggravated the effects of a pre-existing disease, or the disease aggravated the effects of the accident, with both acting as concurring causes of death, there would be no coverage under the policy in question there. In the present case, Hartford points to no specific evidence of which it was aware at the time of the coverage decision that points to a pre-existing condition that was a concurring cause of the aspiration.

Viewing these facts in the light most favorable to Houchin, as the Court must, Houchin has made a minimally sufficient showing from which a reasonable juror could find Hartford did not undertake an appropriate and thorough investigation, and did not have a reasonable basis to deny the claim. Therefore, Hartford is not entitled to summary judgment on Houchin's bad faith claim.

### III. PUNITIVE DAMAGES

Similarly, the Court finds Houchin has demonstrated genuine issues of material facts regarding whether Hartford's conduct may warrant an award of punitive damages. Under Oklahoma law, an insurer may be subjected to punitive damages for breach of its duty to deal fairly and in good faith with its insured only if a jury finds by clear and convincing evidence that the insurer's breach was either reckless or intentional and with malice. 23 OKLA. STAT. §§ 9.1(B)(2), (C)(2). The record herein

contains minimally sufficient facts and evidence that, viewed most favorably to Houchin, could support a reasonable finding that Hartford recklessly disregarded her rights to fair treatment, reasonable investigation, and timely payment on her claim. Therefore, Hartford is not entitled to summary judgment on the issue of punitive damages.

## CONCLUSION

For the reasons stated, Hartford's Motion for Summary Judgment [Doc. No. 21] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED** this 8th day of February, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE